Ricardo Rego, Fred Poston. Oral argument not to exceed 15 minutes per side. Bostic for the Plaintiff Appellant. Good morning, Your Honors. May it please the Court, Nick Bostic on behalf of the Plaintiff Appellant, Jared Rapp. I would like to reserve five minutes for rebuttal. Obviously, in starting with the First Amendment claim, I would assume that the question that you're most interested in is, should the accrual of that claim be delayed and attached to the same accrual date as the malicious prosecution claim? In this case, I don't know that a per se rule is appropriate. It appears to me to be an issue of first impression at this level in this circuit. I cited and discussed the two district court cases and the reasoning of those judges, which I'm asking that you adopt, at least for purposes of this case. And I cited Hartman v. Moore on page 11 of my brief, where they said that when a malicious prosecution claim is brought based upon a retaliation claim, a First Amendment retaliation arrest or prosecution, that the lack of probable cause must be shown by the plaintiff. To me, that makes the dependency and the intertwining of these two claims so obvious that the accruals should go together. Otherwise, a plaintiff is forced to file within the statute of limitations in state court or in federal district court and then either stay it or hold it in abeyance. And to me, that's a waste of resources. So I would ask that the district court be reversed on that issue and rule that the accrual date, whatever you decide that is in the malicious prosecution claim, be the same. Isn't the Supreme Court case of Wallace v. Cato against you? Because, I mean, it holds that, hey, 1983 claims can and often do accrue before the setting aside of a related criminal conviction, right? It does. And I think unless you agree with those district judges that either independently or because of Hartman v. Moore, they're dependent on each other, then I agree. So it hinges on, I think, you making a finding that they're dependent on one another. So moving on to the malicious prosecution claim, I guess the first thing I would point out is that on page 8 of Judge Yonker's decision, in the last sentence, he said the three-year statute of limitations applied, effective July 2012, and then the math is off. Clearly meant two years, didn't he? Well... Which is wrong. Probably because of the previous discussion. Everything was focused on two years under state law. And then he said three years. And I don't know, they kept, the district court and the defense said that I somehow impliedly agreed that the two-year statute of limitations applied. And that's a reference to page 85 of my, page ID 85 in the district court record where I simply noted that the filing was within two years of the state district court dismissal. I didn't cite to a statute of limitations section. I was simply stating how much time had passed along the calendar. Did you argue to the contrary? Pardon me? Did you argue to the contrary? Yes. In the district court, we argued that it was a three-year statute of limitations. Now, as Judge Yonker pointed out, there wasn't much discussion in the briefing. It was fairly, it was very brief, the mention of it, because to me, the focus by the defendants was on Rule 56. But I did cite in my opposition to the motion in district court McCune and the three-year statute of limitations for malicious prosecution claims brought under 1983. I gather the district judge used the two years because that is the state statute of limitations for state malicious prosecution claims, right? Yes. And that's what the defendants had asked him to do. But in McCune, at page 905, and they cite to McMaster versus the Cabinet for Human Resources, which is 824 Fed 2nd 518 from 1987, the federal law determines not only the accrual date, but the characterization. And that's how this circuit got to the point of picking the residual personal injury claim. So, now, then that thing, I think, I don't know that there's a lot more I can say on the statute of limitations issue in terms of which, whether it's two or three. So, the last point I think I want to mention briefly is whether to use July 2012 or November 2012. And I suppose in the right case, we could even argue as to whether or not the appeal period would apply to delay accrual. We don't have that here because 90 days from the Michigan Supreme Court to the United States Supreme Court would have stopped in October. So, I'm passing it. If we decide that you're right about the three-year statute of limitations, it won't matter either date. I agree. Right. So, I'm not going to spend a lot of time on it, but I just wanted to remind the court that Mr. Rapp's bond was held and his fines weren't reversed by the State District Court until the November date. Rightly or wrongly, he and I assumed he was still subject to the jurisdiction of the State District Court. Maybe we were wrong, but we assumed it at the time. So, they could have gone to the U.S. Supreme Court because the Michigan Supreme Court decided it on federal grounds. I just think that when you have a state prosecution, that the court with the original jurisdiction over the charge, when they do the final action, that should be the trigger date. For practical purposes and just clarity, they were the ones with the original jurisdiction to either amend or whatever. Let's say you're right, that the District Court erred. It's a three-year statute, not a two-year statute, so he shouldn't have dismissed the malicious prosecution claim on a statute of limitations. But the alternative defense, I guess, by the defendants is, hey, qualified immunity. So, why aren't they entitled to qualified immunity as grounds to affirm? The ordinance used had been, a similar language had been ruled unconstitutional in Houston v. Hill many, many, many years ago, and MSU never changed their ordinance. So, I think that put them on notice via clearly established law that the language of that ordinance was unenforceable. But in terms of today, the District Court did not deny them immunity. So, I don't, I would have to question whether this court has jurisdiction to entertain. You don't have jurisdiction. The issue is preserved in the district. It's raised in the District Court, right? Yes. And it's also raised in the appellee's brief, is it not? It is. All right, so it's preserved. How would we not have jurisdiction? Because the, they didn't file a claim of appeal. They don't need, you filed a claim of appeal. Right, but they don't have a ruling. They don't need a ruling if they raise the issue below and they won. I mean, are you arguing because they didn't file a cross appeal? No, because they didn't. You can see they don't need to file a cross appeal. For most issues, true. For qualified immunity, they didn't, right? I'm sorry, I don't know that I am comfortable parsing that. Okay, if they're not required to file a cross appeal, which they're not, by the way, because they're not asking for their relief to be expanded more than it was in the District Court. The relief granted in the District Court was summary judgment in favor of the defendants. They can't expand that any greater than that. So, how do we not have jurisdiction? It's, that language that you just used, it's my understanding that you can't get relief if you didn't have anything adverse happen to you at the District Court level. I understand that they raised it. All they want is affirmance. Okay. Do you have any authority? I mean, you're, I mean, do you have any authority for your position that we don't have jurisdiction? It was my understanding that unless, that immunity is not an appealable issue interlocutorily unless they're denied immunity. I'd be happy to do it. I think, I wonder if you're, I think that we have jurisdiction. It may be as a jurisprudential matter, the normal routine would be if the District Court hadn't ruled on an issue, we would remand it. Right. But we don't have to. I mean, if we think it's clear that the defendants are entitled to qualified immunity, we certainly have the authority to decide an alternative basis for affirmance. But we, you know, maybe if it's a questionable thing, whether we think you do or don't have qualified immunity applicable, we could remand it back to the District Court. Well, I didn't brief at this level the immunity issue. Well, you should have because they raised it in their brief. I mean, if they have a whole section on their brief, how they're entitled to qualified immunity, you didn't respond to it at all, even in your reply brief. Right. I wouldn't have. So I think you may have conceded the issue by not opposing it. It wasn't in my principle brief. It wasn't in your reply brief either, was it? No. Okay. So you haven't contested their argument they're entitled to qualified immunity. There was no analysis, no ruling in the District Court. It doesn't have to be a ruling as long as they raise the issue in the District Court, they preserved it, they raised it in the appeal. I mean, that's basic appellate practice. But Judge Yonker didn't give me any analysis to challenge. Okay. All right. Can you tell me are there, I mean, the issue of qualified immunity, which you have not contested on appeal, is an issue of law. And we can remand to the District Court if a ruling by the District Court would aid our review. But usually we do so when there's factual issues. We want a finding of fact by the District Court. Here, a strictly legal question and a legal ruling, the District Court's ruling on that has no precedence. It has no weight. It might be interesting, but we review de novo rulings of law, which is what this would be, I think. I mean, do you concede there aren't? Well. That's the case here with the qualified immunity issue? No, because the problem in the District Court was the mixture of Rule 56 arguments with Rule 12 arguments. So I would have to disagree that there's no factual disputes. We have some factual disputes over how the interaction went down in the parking structure. We have some factual disputes as to whether or not Mr. Poston had an opportunity to prevent the constitutional violation. Those Rule 56 summary judgment concepts need to be fleshed out in the context of qualified immunity, and that wasn't done at the District Court level. Good morning, Your Honors. Michael Kiley, appearing for the defendants' appellees. May it please the Court. Indeed, I believe that the trial court and I made the mistake of looking to the state statute of limitations provision governing common law malicious prosecution as opposed to the more general personal injury time period, which would be three years. It was not argued below, and the case law in this area speaks of looking to the most appropriate personal injury statute in state law, which I took to mean you look to the specific cause of action. I don't think that's right. It wasn't argued below. Did the plaintiff contest below whether the two-year or three-year statute applied? No. He just told me he did. I don't have any recollection of that in the brief, even in the trial court's opinion. It's about the record. I mean, if they really did not contest that it was a two-year statute, I think they forfeited the issue by not raising it in District Court. I'm not going to disagree. And that's my understanding is it was not contested. I proceeded with understanding of the argument that we were looking at two years for malicious prosecution, three years for the other, and that there's an interesting accrual question, the delayed accrual. So I proceed with the delayed accrual. But I gather you do concede that it was error, the applicable statute is three rather than two, and you concede that now. Yes. We would review for plain error. I mean, it's unpreserved legal error, not raise. So would the standard of our review be for plain error? What was the last word? Plain error. Would that be our standard of review? Yes, I believe so. The trial court did indeed, I think, make a mistake more just language in saying iterating the numeral three rather than two. At the end of his opinion, he really clearly meant two. Correct. On the delayed accrual question, plaintiff appellate or I'm sorry, the appellee relies largely on two unpublished district court opinions, one from Ohio and one from Kentucky. In both of them, the claims that were treated as benefiting from accrued, a delayed accrual and tied to a malicious prosecution claim were dependent on the disposition of the malicious prosecution claim. And the first one, Chandler, it was a coerced confession and a lack of access to the court was claimed, the First Amendment claim that required a finding, an ultimate finding on the malicious prosecution in order to get to the second claim. Other claims were not treated as subject to accrual of the time period. Similarly, Jones, the other unpublished decision that's included in the briefing, had to do with the malicious prosecution claim and a conspiracy to engage malicious prosecution claim. So they were not just arising from the same general ball of facts, they were literally hand in glove legally and theoretically. I don't think they're helpful. There's one point of law I want to mention. At one point, counsel argued that the Supreme Court decision in Houston ought to have alerted the defendants here regarding the constitutionality of the university's ordinance. The Houston decision had to do with an ordinance that was different, that spoke of disruption, disruption of an officer in his or her work, whereas the university's ordinance spoke of, used different language. I don't see that those ordinances are so closely tied in terms of the language they used to convey their meaning that it would put the defendants on notice of any claim. Well, as far as your qualified immunity claim, should we remand it back to the district court? No, and I hesitate. I'm happy to answer questions, of course, but counsel didn't argue it. But no, I don't see any reason. And the main reason is that qualified immunity, as the court well knows, is supposed to be dealt with early on, as early as practical in the litigation, to spare the governmental defendants both the travails of litigation and the expense. So accepting it so far, it's a matter of discretion, but I don't see a need for it here. Assuming that we do decide to take it up, why should you be entitled to affirmance on the basis of qualified immunity? There has not been allegation sufficient to allow for an inference that the acts, the actual acts and conduct of the individual defendants violated clearly established law. There's a lot of characterization and supposition, implicit supposition, but there's not conduct. There's the student parking enforcement young guy who issued a parking ticket and called for backup at a point where he locked himself in his little vehicle because he was scared of what was about to happen to him. He called for backup. That's the whole story as to him. The officer arrived on the scene and, based on what she saw and heard, submitted the matter forward for ordinance violation. She did not allegedly and affirmatively would state, didn't know anything about Plaintiff or any of his First Amendment exercise of rights vis-à-vis his feeling about parking violations and parking enforcement. And the third person, Fred Poston, Vice President for Finance and Administration, did not allegedly have any arguments with Plaintiff. It's not as though there are facts alleged about some event, something that gave rise to hard feelings and that would allow one to say, oh, there's some bad motive here, or at least it looks like that may be what we've got here. It's just the assertion. And there's a series of e-mails that were submitted in which it's clear Fred Poston just wondered what was going on, agreed to talk to the young man and to see if there was anything he could do, but it's not as though he, and he's affirmatively stated he has never fixed a ticket or sought to intervene in matters being handled by the police vis-à-vis specific individuals. He's in charge of security on campus, generally, so he's involved in security issues. But there's just nothing that points to maliciousness or a bad mindset on the part of these defendants. There's an ugly altercation that occurred that was precipitated by Plaintiff's own admission. He was frustrated. He thought he shouldn't get a ticket and confronted the parking enforcement officer. Things went downhill from there, but I think there's nothing in the complaint that allows one to infer that there's more to the story than what's related, specifically related. So basically there's a Trombley violation and failing to plausibly allege the cause of action? Correct, and especially in the context of qualified immunity where the law calls for setting forth facts that will allow for an inference, there needs to be a really decent sense of what would allow for inference of actionability. I think this may be an over-exuberant law student making a mountain out of a molehill. Well, those of us who went to law school all have these memories, however faint, of being caught up with an interest in advocacy. Well, he did get the statute or the ordinance declared unconstitutional. He did, he did indeed. So you've got to give him credit for that. And I have. Now, hats off to him and his counsel. Is there anything else, counsel? I have nothing unless the court has a question. Apparently not. Thank you. Thank you. Any rebuttal? No. Judge Griffin, I was looking back at my reply on page 5 and 6. I have less than a page, maybe a full page, of a discussion on immunity. Okay. I don't. Hang on here. Statement of issues involved, 1 and 2. I don't see immunity as to the issues involved in the reply brief. Is that correct? That's correct. All right. Now, issues that you wish to have us, well, all right. Issues to be decided have to be clearly set forth in the statement of issues. All right. 4. Okay. Tell me what I'm supposed to look at here. Page 5, section Roman numeral 3. Okay. You had asked me if I addressed it in my reply brief, so I just wanted to, I looked and I did. And I cited Wheeler v. Lansing and ASARCO, which is an acronym, v. Secretary of Labor, for the concept that if they don't get relief different, they're not seeking different relief, there's no jurisdiction above that. So you do raise the jurisdictional argument. Do you address the merits of their defense of qualified immunity that they raised in their brief? No, I did not. Okay. I mean, you're wrong on the jurisdictional issue. I mean, that's just contrary to our law. So that, I mean, that's out. Okay. Did you raise the, okay, the other question I had was the two-year or three-year statute of limitations. They said you didn't raise it in district court. And did you raise it in district court? Tell me where you did. Page ID 85. Okay. And my response is brief. I noted that we filed within two years. I stated that the, and I don't have that right in front of me, so I'm paraphrasing, but I did indicate a three-year statute of limitations. I cited McCune in my brief in opposition to the motion for the Rule 12 relief. And that's page ID 85. Okay. And we didn't, as my recollection is, he did not have us come in to orally argue the summary disposition. In your brief, you argued the three-year rather than the two-year. Okay. I'll look at that. Yes. Judge Gilman, an exuberant law student, he is, he was, he's now a lawyer admitted in Chicago. But in terms of the context of the Rule 56 and potential immunity, his exuberance flowed from his committee activities for the traffic and safety issues that he participated on. I think he did that while he was an undergrad at MSU as well. So he had, I think he had a full seven years on that committee. So he was engaged with the administration off and on. The frustration was just that he got a ticket when he thought the time had not expired on the meter, right? Well, but he needed the ID of the person that issued the ticket, and there's a reference to this in my brief at the district court level, that they were sending people to testify to parking tickets at the state district court that didn't issue it. And those parking employees were not telling the district court that they were simply reading the information off the ticket. My client was aware of that, and so he wanted the identity of the person that issued the ticket so that if he challenged it, he would be dealing with the correct person. So he fits the definition, but his motivation is from his committee activities, and therein flows the First Amendment issue. So Judge Griffin, obviously I hope that this panel does not conclude that I have waived anything, but please understand that the defense mixed Rule 12 and Rule 56 in their pleadings at the district court level. I didn't have analysis to deal with. I touched on it. I didn't analyze it myself, but those are my reasons. But in terms of the substantive reasons that I'm here on appeal, the statute of limitations issue, I would ask that you reverse the district court. Thank you. Thank you, and the case is submitted.